**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 18-136-DLB**

**ALICIA L. STOLZ**                                                                         **PLAINTIFF**

**vs.**                            **MEMORANDUM OPINION & ORDER**

**NANCY A. BERRYHILL, Acting Commissioner
of the Social Security Administration**                                    **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, will **affirm** the Commissioner's decision.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On March 3, 2015, Plaintiff Alisia[1] Stolz filed an application for disability insurance benefits, alleging disability beginning in December 2014. (Tr. 167-68). Plaintiff was forty-seven years old at the time of filing, and she alleged that she was unable to work due to, *inter alia*, fibromyalgia with joint pain and fatigue, headaches, dizziness, depression, post-traumatic stress disorder, and anxiety. *Id.*; (Doc. # 7 at 3). Plaintiff's application was denied initially, and again upon reconsideration. (Tr. 60, 77). At Plaintiff's request, an administrative hearing was conducted on October 4, 2017, before Administrative Law

---

[1]     The record below indicates that Plaintiff's name is "Alisia L. Stolz," but the Complaint was filed in this case naming "Alicia L. Stolz." *Compare, e.g.*, (Tr. 1, 78, 800), *with* (Doc. # 1). Accordingly, for purposes of clarity the Court will conform to the spelling utilized in the record below.

Judge (ALJ) William Diggs. (Tr. 32-59). On November 16, 2017, ALJ Diggs issued a written decision finding that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Social Security Act. (Tr. 14-24). This decision became the final decision of the Commissioner on May 30, 2018, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-5); 42 U.S.C. § 405(g).

Plaintiff filed the instant action on July 30, 2018, alleging the ALJ's decision was "against the evidence" and contrary to law. (Doc. # 1 at 2). This matter has culminated in cross-motions for summary judgment pursuant to the Court's September 28, 2018 Scheduling Order. (Docs. # 6, 7, and 9). Additionally, Plaintiff filed a Response to the Commissioner's Cross-Motion for Summary Judgment, to which the Commissioner filed a Reply. (Docs. # 12 and 14). The matter is now ripe for adjudication.

## II. DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

**B.     The ALJ's Determination**

To determine disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant has engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his or her past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant on Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). As to the last step, the burden of proof shifts to the Commissioner to identify "jobs in the economy that accommodate [the claimant's] residual functional capacity." *Id.* The ALJ's determination becomes the final decision of the Commissioner if the Appeals Council denies review, as it did here. *See Thacker v. Berryhill*, No. 16-CV-114, 2017 WL 653546, at *1 (E.D. Ky. Feb. 16, 2017); (Tr. 1-7).

Here, at Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 4, 2014, the alleged onset date of the disability. (Tr. 16). At Step Two, the ALJ determined that the Plaintiff has the following severe impairments:

post traumatic stress disorder; fibromyalgia; unspecified arthropathies; affective disorder; and anxiety disorder. *Id.* At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16-18). At Step Four, the ALJ found that Plaintiff possesses the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following modifications and limitations:

> [Claimant] can frequently climb ramps or stairs, but only occasionally climb ladders, ropes, or scaffolds; and frequently stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to noise and work hazards such as dangerous machinery and unprotected heights. The claimant is limited to occasional changes in work setting. The claimant can have occasional contact with supervisors, but no contact with coworkers or the public.

(Tr. 18-23). At Step Five, the ALJ determined, informed by testimony of a vocational expert (VE), *see* (Tr. 52-58), that there were other jobs that exist in significant numbers in the national economy that the Plaintiff could perform. (Tr. 24). Accordingly, the ALJ found that the Plaintiff was not under a disability as defined in the Social Security Act. *Id.*

**C.  Analysis**

Plaintiff advances four main arguments in her briefing; first, that the ALJ erred in considering the effects of her fibromyalgia because he required objective evidence. (Doc. # 7 at 5-6). Second, Plaintiff argues that the ALJ erred by affording incorrect weight to physician opinions. *Id.* at 6-11. Third, Plaintiff asserts that the ALJ erred in finding Plaintiff's subjective complaints of disabling limitations to be unsupported. *Id.* at 11-13. Finally, Plaintiff argues that the ALJ erred by asking the VE improper hypothetical

4

questions that did not take into account relevant record evidence. *Id.* at 13. Each argument will be addressed below.

### 1. *The ALJ did not err in evaluating Plaintiff's fibromyalgia.*

Plaintiff argues that the ALJ erred "in noting a lack of objective medical findings (normal neurological and musculoskeletal) since fibromyalgia does not produce objective findings on exams and x-rays." (Doc. # 7 at 5) (citing Tr. 19-20). Plaintiff points to evidence that examinations by her treating rheumatologist, Christopher Colglazier, M.D., "consistently had 18 of 18 tender points for fibromyalgia" and that Plaintiff complained of pain and fatigue. *Id.* Further, Plaintiff argues that the ALJ failed to note that rheumatology is "the specialty which treats fibromyalgia." *Id.* at 6. Plaintiff concludes that, because the ALJ erred in failing to consider that fibromyalgia does not produce objective medical findings on exams and x-rays, "this in turn affected the weight the ALJ assigned to Dr. Colglazier" as well as the ALJ's evaluation of Plaintiff's subjective complaints of pain. *Id.*

Plaintiff seeks to rely on *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243-45 (6th Cir. 2007), to argue that the ALJ referenced "objective" evidence in error. (Docs. # 7 at 5 and 12 at 1). The *Rogers* decision, however, is distinguishable. In *Rogers*, the ALJ completely discounted "the process for diagnosing fibromyalgia involv[ing] testing for tenderness in focal points," and the medical records reflected that the claimant "increasingly exhibited the medically-accepted and recognized signs of fibromyalgia." *Id.* The *Rogers* court's focus upon the objective, "medically-accepted and recognized" symptoms echoes sister courts' assertions that, while the existence of fibromyalgia may not be determinable by objective medical tests, "the physical limitations imposed by the condition's symptoms can be objectively analyzed." *Tarpley v. Colvin*, 601 F. App'x 641,

5

643 (10th Cir. 2015); *see also Boardman v. Prudential Ins. Co. of Am.*, 337 F.3d 9, 17 n.5 (1st Cir. 2003). Because the physical limitations of fibromyalgia can be objectively observed, therefore, mere diagnosis of fibromyalgia "does not automatically entitle [the claimant] to disability benefits." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 805 (6th Cir. 2008). *See also Stankoski v. Comm'r of Soc. Sec.*, 532 F. App'x 614, 619 (6th Cir. 2013) ("[A] diagnosis of fibromyalgia does not equate to a finding of disability or an entitlement to benefits").

In *Vance*, decided one year after *Rogers*, the claimant sought to raise the same assertion Plaintiff brings here, "that fibromyalgia is an unusual impairment in that its symptoms are often not supportable by objective medical evidence." *Id.* at 806. Nevertheless, the Sixth Circuit found that, while "[s]ome people may have a severe case of fibromyalgia as to be totally disabled from working . . . most do not." *Id.* Therefore, the Sixth Circuit determined that, without more, a simple diagnosis was insufficient— particularly where the claimant's condition was either improving or stable. *Id.*

Here, unlike the ALJ in *Rogers*, ALJ Diggs did find that Plaintiff had fibromyalgia and specifically noted that Plaintiff's treating physicians documented the diagnosis using the test for tenderness in focal points. (Tr. 16, 19). *See Woodard v. Comm'r of Soc. Sec.*, No. 3:07-cv-1162, 2009 WL 2065781, at *6 (M.D. Tenn. July 10, 2009) (distinguishing *Rogers* when the ALJ "identified fibromyalgia as a severe impairment of the Plaintiff"). ALJ Diggs found that those same treaters' notes did not reflect objective physical findings that Plaintiff's fibromyalgia imposed the requisite limitations that would prevent her from performing a range of light work. (Tr. 19). Further, while the ALJ found that fibromyalgia was among the severe impairments Plaintiff has, he concluded that this impairment does

6

not equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, nor does it rise to the level of someone who is fully disabled. (Tr. 16-20).

The ALJ's conclusion is supported by substantial evidence in the record. *See, e.g.*, (Tr. 374-75, 382, 494, 560, 584, 610, 615, 759, 762). As the ALJ noted, Plaintiff is able to ambulate effectively without the use of an assistive ambulation device; moreover, her physical conditions appear to be generally well-managed with conservative, routine treatment. (Tr. 19). Nor were her physical symptoms severe enough to require inpatient hospitalizations, frequent emergency treatment, or significant treatment with a specialist. *Id.* Treatment notes show that Plaintiff was responsive to medications without side effects, and she demonstrated normal gait and station as well as full strength. *Id.* Plaintiff also testified that she is able to care for her personal needs, do household chores, climb a flight of stairs, and attend school events for her child. (Tr. 48-49). Moreover, medical records describe Plaintiff's condition as stable. (Tr. 762, 766).

Without more—in the form of objective medical findings regarding the physical limitations imposed by the fibromyalgia—Plaintiff fails to demonstrate how the ALJ's conclusion that she was able to perform a range of light work was in error. When an ALJ has examined the record as a whole and his decision is supported by substantial evidence, this Court must affirm the ALJ's decision—even if the Court might have decided the case differently. *Listenbee*, 846 F.2d at 349; *Her*, 203 F.3d at 389-90. Accordingly, as the ALJ's decision is supported by substantial evidence and the Court finds no error in the ALJ's analysis, the decision is **affirmed**.

## 2. The ALJ gave appropriate weight to physician opinions.

Next, Plaintiff asserts that the ALJ erred in giving greater weight to the opinions of Dr. Rosenthal, who performed a single consultative psychological examination, and State-agency medical consultants, who reviewed Plaintiff's records, than to the opinion of Plaintiff's treating mental health counselor, Thomas L. Volker, Ed.D. (Doc. # 7 at 6; Tr. 387-90). Due to this alleged improper weighing of the evidence, Plaintiff contends that the ALJ erroneously concluded that "occasional contact with others and occasional changes on a job" were the only work-related limitations associated with Plaintiff's affective and anxiety disorders. *Id.* Plaintiff asserts that the consultants' opinions were not entitled to greater weight because additional medical records were submitted following their review in 2015. Plaintiff also argues that the ALJ erred in failing to afford controlling weight to the opinion of her treating rheumatologist, Dr. Colglazier. *Id.* at 8.

ALJ Diggs's reliance on the 2015 review does not constitute error under the circumstances because the ALJ's opinion demonstrates that he properly considered the subsequent records. "In the event that a non-examining source did not review a complete case record," all that the Sixth Circuit requires of the ALJ is "some indication that the ALJ at least considered these facts before giving greater weight to an opinion from the non-examining source than to the opinion of a treating or examining source." *Hastings v. Comm'r of Soc. Sec.*, No. 16-CV-1083, 2018 WL 1525697, at *7 (W.D. Tenn. Mar. 28, 2018) (citing *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)).

Here, the ALJ considered the new evidence, and expressly tempered his deference to the consultants' opinions based upon the new evidence presented.

Specifically, the ALJ's opinion states that "additional medical evidence received in the course of developing the claimant's case for review at the administrative hearing level justifies a conclusion that the claimant's impairments result in somewhat different limitations than was concluded by the state examiners, as set forth in the residual functional capacity found herein." (Tr. 22). The ALJ assessed a more restrictive RFC than suggested by Dr. Rosenthal based upon the evidence received after Rosenthal's review. *See id.*

Likewise, the ALJ gave "some weight" to the two reviewing State-agency psychologists' opinions indicating that Plaintiff could perform at least simple tasks and adapt to changes and stressors in a full-time work setting. (Tr. 22; *see also* Tr. 72-74, 88, 90-91). The ALJ found that later notes showed that Plaintiff's mental impairments resulted in somewhat different limitations than the reviewing consultants found, and thus the ALJ found that Plaintiff was more limited in areas such as social interaction and less limited in others, such as the complexity of work. (Tr. 22). Accordingly, the ALJ ultimately concluded that Plaintiff could only perform unskilled, routine jobs with a limited specific vocational preparation level of 2 that present lowered mental-functioning requirements. (Tr. 24, 55-56). This decision was supported by a full review of the evidence.

Moreover, the weight that ALJ Diggs afforded the respective physicians' reviews does not constitute error. Generally, a treating physician's opinion is entitled to greater deference. 20 C.F.R. § 1527(d). However, "[i]n appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). An ALJ is charged with weighing a treating physician's opinion in light of the record

as a whole, and the ALJ may discount an opinion if it is not supported by objective evidence or is inconsistent with the record. *Cutlip*, 25 F.3d at 287 (stating that treating physicians' opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence"). "Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record," the Sixth Circuit "generally will uphold an ALJ's decision to discount that opinion" so long as the ALJ provided "good reasons" for doing so. *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175-76 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). *See also Woodard*, 2009 WL 2065781, at *6 (affirming ALJ's decision when he "fulfilled his duty to provide Plaintiff with an adequate explanation as to why he did not accept [the Plaintiff's] treating physician's disability determination, the relative weight which he did accord each opinion, and his reasons for doing so").

Here, as in *Woodard*, the ALJ gave good reasons for his decision to afford less weight to the opinion of Plaintiff's treating mental health counselor, Dr. Volker. Specifically, the ALJ found that the extent of limitations set forth in Dr. Volker's opinion contrasted with his treatment notes. (Tr. 22, 800-803). The ALJ's review of Dr. Volker's treatment notes reflected conservative and routine treatment with "no evidence of episodes of decompensation." (Tr. 22, 520-36). Further, Plaintiff's impairments appeared to be well-managed with therapy and medications, and the notes indicated that Plaintiff was able to engage in daily activities despite her mental impairments. (Tr. 17, 22, 804-861).

10

This is in contrast to Dr. Volker's opinion wherein he indicated that Plaintiff had three or more episodes of decompensation within the last twelve months. (Doc. # 12 at 3; Tr. 800-803). By pointing to Dr. Volker's contrasting opinion, Plaintiff essentially argues that the ALJ cherry-picked evidence to support the RFC finding. Such an allegation "is seldom successful," however, "because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). That is not the role of this Court. "When deciding . . . whether substantial evidence supports the ALJ's decision, [courts] do not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Because the ALJ examined the record as a whole and his decision is supported by substantial evidence, this Court must affirm the ALJ's decision, even if the Court might have decided the case differently. *Listenbee*, 846 F.2d at 349. Accordingly, the Court finds that the ALJ met all procedural and evidentiary requirements when assigning a weight to the medical opinions raised by Plaintiff, and the Court finds no error in the ALJ's analysis.

Plaintiff further argues that the ALJ did not give proper weight to Plaintiff's treating rheumatologist, Dr. Colglazier, who treated Plaintiff for fibromyalgia and joint pain. (Doc. # 7 at 8). Plaintiff argues that the ALJ should have afforded controlling weight to Dr. Colglazier's opinion that Plaintiff could not "work eight hours a day." *Id.* (citing Tr. 940-45). Again, however, Plaintiff's arguments fail, as the ALJ provided good reasons for giving less weight to Dr. Colglazier's opinions. *Price*, 342 F. App'x at 175-76; *Woodard*, 2009 WL 2065781, at *6.

First, the ALJ found it significant that Dr. Colglazier completed the fibromyalgia medical source statement by relying upon a functional capacity evaluation that was "performed by an occupational therapist and [was] not dated." (Tr. 20). The ALJ noted that "an occupational therapist . . . cannot be used to establish medically determinable impairments or provide 'medical opinions.'" (Tr. 21). Further, having "considered all of the relevant factors, including the doctor's specialization, the doctor's explanation for the opinion, and the consistency of the opinion with the record as a whole," the ALJ noted that "the limitations set forth by the doctor are not well supported by the totality of the medical evidence or signs and findings reported in Dr. Colglazier's records." (Tr. 21). Specifically, the ALJ found it inconsistent that "the doctor's treatment records do not reflect any other abnormal objective physical examination findings beside 18/18 tender points." *Id.*

And as noted, the other providers' treatment notes regularly documented largely normal examination findings. (Tr. 311, 314, 374-75, 382, 494, 560-61, 584-85, 610, 715, 759, 762, 766, 1016). Without more, the ALJ found that the "extreme limitations" set forth in Dr. Colglazier's opinion simply did not match the objective evidence of Plaintiff's limitations in the record. (Tr. 20-21). Dr. Colglazier's Fibromyalgia Medical Source Statement indicates Plaintiff has "numbness or tingling," "muscle pain" and "muscle weakness," but physical examinations on the record reveal normal gait and station, normal motor function, intact touch sense, normal tone without spasticity or rigidity, no atrophy, no abnormal movements, and full strength throughout. (Tr. 311, 314, 374-75, 382, 494, 560, 584-85, 610, 615). Plaintiff testified at the evidentiary hearing that her appetite is "very low," and Dr. Colglazier's Statement indicates she has a "loss of

appetite." (Tr. 41, 1033). However, medical records show Plaintiff has a body mass index of 30 and presented as negative for weight or appetite changes. (Tr. 560, 584, 759, 761). Further, Dr. Colglazier's Statement indicates that Plaintiff had "shortness of breath," but medical records show Plaintiff presented with normal breath sounds, no respiratory distress, no wheezing, and no chest tenderness. (Tr. 494, 560, 584-84, 1033). Simply put, as the ALJ noted, the record shows that "the claimant's physical conditions were generally well managed with conservative, routine treatment," with no inpatient hospitalization, frequent emergency treatment, or "significant treatment with a specialist." (Tr. 19, 608-610, 615, 758-59, 762-64, 766).

In sum, the ALJ gave a number of good reasons for choosing not to afford controlling weight to Dr. Colglazier's opinions, and those reasons are supported by substantial evidence on the record. Accordingly, just as with Dr. Volker's opinion, the Court finds that the ALJ met all procedural and evidentiary requirements when assigning a weight to the medical opinions put forth by Plaintiff, and the Court finds no error in the ALJ's analysis. Consequently, Plaintiff's argument fails and the ALJ's decision is **affirmed**.

> 3. *The ALJ did not err in assessing Plaintiff's credibility and evaluating her subjective complaints of pain.*

Third, Plaintiff essentially argues that the ALJ failed to properly evaluate the Plaintiff's subjective complaints of pain. (Doc. # 7 at 11). The thrust of Plaintiff's argument is that the ALJ's opinion erred because it does not "deal[] with the parts of [the record] which help her claim." *Id.* In support of her claim, Plaintiff points to, *inter alia*, record testimony that she has good days and bad days, spends much of her day in bed, and that it takes her all day to complete tasks in the house. *Id.* (citing Tr. 45, 47-48, 50-51, 56,

13

203, 216-17, 516). This argument also lacks merit. Without more, a claimant's complaints of pain will not establish that an individual is disabled. *Amir v. Comm'r of Soc. Sec.*, 705 F. App'x 443, 449 (6th Cir. 2017).

In determining an RFC, the ALJ must evaluate the claimant's complaints of pain, and, in doing so, the ALJ may consider the credibility of the claimant. *Vance*, 260 F. App'x at 806. The ALJ undertakes a two-prong assessment—first, determining if there is objective evidence of an underlying condition which could cause pain, and then determining whether "objective medical evidence confirms the severity of the alleged pain arising from the condition, or . . . the objectively established medical condition is of such severity that it can reasonably be expected to produce the disabling pain." *Vance*, 260 F. App'x at 806 (citing *Duncan v. Sec. of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). An ALJ's assessment of credibility, if supported by substantial evidence, is "to be accorded great weight and deference" because, unlike the reviewing court, the ALJ has the opportunity to observe a witness's demeanor while testifying. *Walters*, 127 F.3d at 528 (citations omitted); *Jones*, 336 F.3d at 476.

Here, upon review of the record, the ALJ properly conducted the two-prong assessment to evaluate Plaintiff's subjective complaints of pain. First the ALJ determined that "the claimant's medially determinable impairments could reasonably be expected to cause the [Plaintiff's] alleged symptoms." (Tr. 19). Regarding the second prong, however, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

Considering the medical records and opinions in the record, the ALJ noted, for example, that "although the claimant alleges debilitating pain, she is still able to ambulate effectively and does not require the use of an assistive ambulation device." (Tr. 19, 766). The ALJ also found it significant that Plaintiff's complaints of pain "did not result in symptoms that demonstrated most of the signs typically associated with chronic, severe pain, such as muscle atrophy, spasm, rigidity, or tremor." (Tr. 19, 584-85, 610, 759, 766). In contrast, "the record shows that the claimant's physical conditions were generally well managed with conservative, routine treatment," with no inpatient hospitalization, frequent emergency treatment, or "significant treatment with a specialist." (Tr. 19, 311-314, 374-75, 382, 759, 766). Physical examinations on the record revealed "normal gait and station; intact touch sense; normal tone without spasticity or rigidity; no atrophy; no abnormal movements; and full strength throughout." (Tr. 19, 615, 1016). Dr. Colglazier's treatment notes "show that the claimant was responsive to medications without side effects." (Tr. 19, 455). Without any evidence of more aggressive treatment or any documented medical evidence of "more serious signs, findings, and symptoms," the ALJ concluded that "the claimant's treatment history and findings on evaluations and examinations are not consistent with, nor do they support, the intensity, severity, or frequency of limitations she alleged." (Tr. 20).

In addition to the medical evidence, the ALJ also found that Plaintiff's own testimony and other record evidence conflicted with her subjective complaints of pain. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The [ALJ] justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."). The ALJ pointed to record evidence that "the claimant is able to

perform a wide range of activities of daily living . . . [and] despite her impairments, she has engaged in a somewhat normal level of daily activity and interaction . . . not consistent with someone who is disabled [and which] replicate those necessary for obtaining and maintaining employment." (Tr. 20). In support of this conclusion, the ALJ pointed back to his observation from the record that:

> the evidence shows that the claimant does chores, including vacuuming, laundry, changing beds, cleaning, grocery shopping, and taking care of her kids, but sometimes at a slower pace and with some help; drives kids to activities; takes care of two sons, including checking backpacks, signing papers, getting them up for school, reminding them of personal hygiene, and helping with homework; takes care of pets, including feeding, playing with, and watering them, as well as taking to vet and groomer; has no problems with personal care; prepares meals on her own; drives; can go out alone; shops in stores weekly; is able to manage money; reads and watches television; uses Facebook; attends family get together[s]; goes to church; attends kids' activities; volunteers at church; travels and vacations; eats out; talks on the phone; [and] texts on the phone.

(Tr. 17-18). Thus, substantial evidence supports the ALJ's finding regarding the intensity, persistence, and limiting effects of Plaintiff's subjective complaints of pain.

Plaintiff disagrees with the ALJ's conclusion and argues that "Ms. Stolz does these when able and at her own pace and with help." (Doc. # 12 at 4). However, even if substantial evidence exists to support Plaintiff's claim, it is improper for the Court to simply re-weigh the evidence. *Cutlip*, 25 F.3d at 286; *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). All that is required of the ALJ is that he render a decision that is supported by substantial evidence. *Listenbee*, 846 F.2d at 349. The ALJ has done so here. While the ALJ weighed the evidence contrary to how the Plaintiff preferred, the Court again finds no error in the scope of the ALJ's analysis and concludes that the ALJ

properly considered Plaintiff's subjective complaints of pain. *See Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 436 (6th Cir. 2013).

Plaintiff similarly argues that the ALJ erred "in dismissing the statement" from Plaintiff's mother because "[t]he mother does not need to be medically trained to complete a form listing her observations, and the form is not suspect if completed by a relative!" (Doc. # 7 at 12) (citing Tr. 202-210). In making disability determinations, an ALJ considers various types of evidence, including "objective medical evidence" obtained from "acceptable medical sources," as well as "the claimant's own statements about his or her impairments and symptoms" and "non-medical sources, such as parents, teachers, and other caregivers." *Simon on behalf of K.A.W. v. Comm'r of Soc. Sec.*, No. 3:13-cv-01245, 2017 WL 3184481, at *2 (M.D. Tenn. June 22, 2017) (citing 20 C.F.R. §§ 416.913(a), (b), & (d)). "In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, the ALJ "consider[s] such factors as nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *Ashmore v. Comm'r of Soc. Sec.*, No. 1:17-cv-100, 2019 WL 1198889, at *2 (M.D. Tenn. Mar. 14, 2019) (affirming ALJ's decision to afford limited weight to letter from claimant's father).

Here, the ALJ appropriately considered these factors. The ALJ considered but afforded less weight to the mother's statement "by virtue of her relationship to the witness," as she "cannot be considered a disinterested third party witness whose testimony would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." (Tr. 22). More

17

importantly, the ALJ noted that "significant weight cannot be given to [the mother's] report because it, like the claimant's[,] is not consistent with the preponderance of the opinions and observations by medical doctors in this case." (Tr. 23). Finally, the ALJ noted that the mother's statement did not establish that Plaintiff was disabled. (Tr. 22). In fact, the mother's written statement documents a wide range of activities that support the ALJ's activity finding. *See* (Tr. 204) (stating that Plaintiff "does cooking, laundry, cleaning rooms, driv[es] [her children] to activities" and "walks the dogs . . . feeds and waters . . . [and] plays with them"). Consequently, while the ALJ weighed the evidence contrary to how the Plaintiff preferred, the Court again finds no error in the scope of the ALJ's analysis and concludes that the ALJ properly considered the written statement of Plaintiff's mother. *See Minor*, 513 F. App'x at 436. Consequently, Plaintiff's argument fails and the ALJ's decision is **affirmed**.

### 4. *The ALJ did not rely on answers to improper hypothetical questions to the VE.*

Finally, Plaintiff argues that several hypothetical questions the ALJ asked the VE were improper. (Doc. # 7 at 13). Plaintiff does not specify which of the ALJ's questions are objectionable; rather, she merely argues that "[t]hese were improper because they left out the days of work she would miss each month . . . left out the supported limitations of Dr. Colglazier and Dr. Volker . . . [and] also left out the moderate deficiencies of concentration, persistence, or pace which the ALJ himself found at Tr. 17 and the marked limitations by Dr. Volker." *Id.* (citing Tr. 17, 56, 802).

As discussed *supra*, however, the ALJ's RFC was reasonable and supported. The ALJ was not required to include additional, unsupported limitations in his questions to the vocational expert. It is well established that an ALJ may impose hypothetical questions

to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Where, as here, the ALJ weighed Plaintiff's subjective complaints, the treatment notes, and the medical source opinions of record, and his opinion is supported by the record as a whole, the Court will not disturb the decision on review. *Longworth*, 402 F.3d 591, 595 (6th Cir. 2005). Consequently, Plaintiff's final argument fails and the ALJ's decision is **affirmed**.

### III.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)    The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2)    Plaintiff's Motion for Summary Judgment (Doc. # 7) is hereby **DENIED**;

(3)    Defendant's Motion for Summary Judgment (Doc. # 9) is hereby **GRANTED**;

(4)    This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5)    A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 29th day of May, 2019.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\SocialSecurity\MOOs\Covington\18-136 Stolz MOO.docx